MANSON (CLARKSON v.). See Case No. 2,-867.

MANTON (LANSING v.). See Case No. 8,-077.

MANTON, The HERBERT. See Cases Nos. 6,399 and 7,319.

MANTOR (UNITED STATES v.). See Case No. 15,719.

---

## Case No. 9,050.

### MANUFACTURERS' & FARMERS' BANK v. BAYLESS.

[Brunner, Col. Cas. 8: [1] 1 West. Law Month. 356.]

Circuit Court, N. D. Ohio. Jan. Term, 1859.

STATE EXEMPTION LAWS — HOMESTEAD — EXECUTION—HOMESTEAD EXEMPTION LAWS.

1. State exemption laws apply to process issued from the federal courts. The homestead of the head of a family is exempt from sale on a judgment rendered by a court of the United States in the same manner as upon a judgment of a state court.

2. Where a portion of the defendant's lands, on which is situated a dwelling-house far exceeding the value of the homestead entitled to exemption, is subject to a mortgage nearly equal to the value of that portion of his lands, and the defendant has another parcel, on which is a dwelling occupied by part of his family, of a value within the limits of the statute exemption, he is entitled, upon his request, to have the latter set off and exempted from sale on execution.

In equity.

S. J. Andrews, for the motion.
Paine & Wade, opposed.

WILLSON, District Judge. A motion is made to set aside the appraisal in this case, and the reason assigned is that the defendant, at the time of the levy and appraisal of the land described in the marshal's return upon the execution, was the head of a family, and that he and his family then resided upon the upper tract of land included in said appraisal, and which was and is known as the "Millville Farm." That the defendant, prior to the making of said appraisement, demanded of the deputy marshal under whose direction said levy and appraisal were made, to set off and assign to said defendant a homestead in the said Millville farm, which the said deputy marshal refused to do, but caused said appraisal to be made without reference to the homestead exemption claimed by said defendant.

This motion presents two questions for our consideration:—(1) Upon an execution issued from the United States circuit court in Ohio, and where the marshal, in executing the writ, levies upon land, has the defendant the right to the homestead exemption, provided for by the Ohio statute of 23d March, 1850? And, (2) If the state law in this particular is applicable, then, is the defendant in this case entitled to its benefits?

The first section of the state law of March 23, 1850, provides that from and after the 4th day of July, 1850, the homestead of each head of a family shall be exempt from sale

1 [Reported by Albert Brunner, Esq., and here reprinted by permission.]

on any judgment or decree rendered on any cause of action after the taking effect of the act; provided, that such homestead shall not exceed five hundred dollars in value. Swan's St. 511. The third section of the act of congress of May 10, 1828, declares "that writs of execution and other final process issued on judgments and decrees rendered in any of the courts of the United States, and the proceedings thereupon, shall be the same, except their style, in each state, respectively, as are now used in the courts of such state, saving to the courts of the United States in those states, in which there are no courts of equity, with the ordinary equity jurisdiction —the power of prescribing the mode of executing their decrees in equity by rules of court; provided, however, that it shall be in the power of the courts, if they see fit in their discretion, by rules of court, so far to alter final process in said courts, as to conform the same to any change which may be adopted by the legislatures of the respective states for the state courts." 4 Stat. 281. The first section of this act expressly adopts the mesne process and modes of proceeding in suits at common law, then existing in the highest state court, under the state laws, which it has been held included all the regulations of the state laws as to bail, and exemptions of the party from arrest and imprisonment. In regard, also, to writs of execution and other final process and proceedings thereupon, the third section declares they shall be the same as were then used in the courts of the state. There can be no question that the provisions contained in this section relating merely to executions and modes of proceeding after judgment are exceptions to the thirty-fourth section of the judiciary act of 1789 [1 Stat. 92], which enjoins upon the federal courts the adoption of state laws as rules of decision in certain cases. They are exceptions, because nothing is left for implication, as congress has legislated directly upon the subject-matter. The law is express that executions and the proceedings thereupon shall be the same as were used in each state on the 10th of May, 1828, conferring, however, upon the federal courts the power, in their discretion, by rules, to so alter final process in said courts as to conform the same to any change which might be adopted by the legislatures of the respective states for the state courts.

It has accordingly been urged with some plausibility, that inasmuch as there was no homestead exemption law in force in Ohio, on the 10th of May, 1828, the subsequent enactment could have no binding obligation in the execution of process from the federal courts, unless those courts should by rule adopt such law; and that as this court has adopted no rule upon the subject, the defendant cannot claim its benefits. This is not a question upon the mode of proceeding upon an execution. It does not involve the inquiry how the levy upon real estate should be made, and the duties of the marshal as to

the mode of appraisal, advertisement, and sale. But the question here goes directly to a rule of property. It relates not to the proceeding, but to the property proceeded against. As an incident to sovereignty, the state of Ohio, through its legislature, has not only the power to declare what shall constitute a valid title to real property, but also the mode of alienation of such property. It certainly has power to change a rule in the common law in the matter of divesting title, as was done by the act of February 28, 1846, in relation to the interest of husbands in the estates of their wives. It can, by a law of limitation, determine when a judgment shall cease to have any legal effect, and by a like law it can deny to the lawful owner the right to recover the possession of his land. And so it can exempt from legal process to the head of a family, a homestead, as provided in the act of March 28, 1850. This law of exemption has a direct operation upon property, and has as much force as the law which gives effect to a title in fee simple when obtained by deed. It confers a right which it is not in the power of congress by legislation, nor within the province of the federal courts, by rules, to divest. This question comes clearly within the principle of the case of Ross v. Duval, 13 Pet. [38 U. S.] 45, where it was held by the supreme court of the United States that the act of the legislature of Virginia in 1792, to regulate proceedings in judgment, was substantially and technically a limitation on judgments, and was not, therefore, an act to regulate process. It was declared to be a limitation law, establishing a rule of property, and under the thirty-fourth section of the judiciary act, affording a rule of decision for the courts of the United States. This was but a reaffirmance of the principle established by the supreme court in the case of Green v. Lessee of Neal, 6 Pet. [31 U. S.] 291. But were this a question of practice merely, we should incline to recognize the provisions of the state law, even in the absence of a rule of court upon the subject. It is far preferable to yield to than encroach upon state laws, especially in enforcing remedies upon contracts entered into with reference to these laws. And it is administering justice in the true spirit of the constitution and laws of the United States to conform, as nearly as practicable, to the administration of justice in the courts of the states. We therefore hold, on principles of law as well as upon considerations of comity, that on execution issuing from this court the party whose land is seized is entitled to the benefits of the homestead exemption, in the manner and to the same extent that is secured to the judgment debtor under the law of the state.

It only remains to consider the evidence touching the defendant's right to a homestead exemption in the property levied upon by the marshal in this case. All the testimony submitted is comprised in three affidavits, to

wit, that of J. M. Rickey (the deputy marshal who made the levy), of J. B. Bayles (the defendant), and of Jefferson Stringer (one of the appraisers). It appears from this testimony that at the time of the levy and appraisal of the "Millville Farm," so called, the defendant demanded a homestead therein to be exempted and set off to him for that purpose, and that this demand was refused by the marshal. It further appears that the defendant was carrying on the farm himself, and a part of his family, with his household furniture, was in the occupation of the house sought to be discharged from appraisal and sale. His other real estate, as the evidence shows, was mortgaged for about its full value, and the mortgage was executed by himself and wife; and that the dwelling-house upon encumbered land was far too valuable to constitute the homestead allowed by the statute. This evidence clearly shows the defendant to be entitled to a homestead exemption in the land levied upon, and which was appraised without recognition of his right under the local law. The appraisal is accordingly set aside.